OPINION OF THE COURT
Barry A. Cozier, J.
These two proceedings involve the disposition of funds held by respondent/cross petitioner James C. Freund, Esq. (Freund), as escrow agent for James Pappas and T. Peter Pappas. Freund holds approximately $419,000 (the escrowed funds) in an interest-bearing account under the title "The T. Peter Pappas Family Trust, beneficiary Mary Louise Pappas” (the Trust). On December 16, 1996, David M. Robinson, the current trustee of the Trust, executed (on behalf of the Trust) an affidavit of confession of judgment in the sum of $450,000 in favor of Mary Louise Pappas (wife of T. Peter Pappas). On December 18, 1996, this judgment was entered in the office of the Clerk of New York County.
Petitioner, Mary Louise Pappas, commenced the initial proceeding herein (the Turnover Proceeding) for an order pursuant to CPLR 5225 (b) or 5227, directing respondents Freund and the law firm of which he is "of counsel”, Skadden, Arps, Meagher & Flom (Skadden), to turn over the escrowed funds to her as a judgment creditor. Subsequently, Ms. Pappas caused a Sheriffs levy and execution with notice to garnishee to be served on Freund and Skadden, seeking delivery of the escrowed funds.
Shortly thereafter, Freund commenced the second proceeding (the CPLR 5239 proceeding), in which he seeks a judicial determination as to the proper disposition of the escrowed funds, following notice and an opportunity to be heard by all *468 parties who may have an interest in the funds, including Bankers Trust Company (Bankers Trust). In addition, Freund seeks an order enjoining Ms. Pappas and the Sheriff from taking any steps to enforce the Sheriff’s levy and execution during the pendency of the CPLR 5239 proceeding. Freund also seeks an order consolidating the Turnover and CPLR 5239 proceedings.
BACKGROUND
In August 1994, James A. Pappas and T. Peter Pappas retained Freund to act as a mediator to resolve certain longstanding business disputes between them. In connection with such mediation, in April 1995, approximately $400,000 was deposited with Freund as escrow agent. As of January 8, 1997, the value of the escrowed funds was $419,039.24.
Notwithstanding Ms. Pappas' initial requests that the escrowed funds be delivered to her and the commencement of the Turnover Proceeding, Freund asserts that other entities may have a claim to the escrowed funds and, consequently, commenced the CPLR 5239 proceeding. In support of this assertion, Freund states that on July 18, 1996, he and Skadden were served with subpoenas duces tecum by Bankers Trust in its attempt to enforce a November 1996 $7.4 million judgment entered in the Supreme Court, New York County (Justice I. Gammerman), against James A. Pappas, T. Peter Pappas and various companies they allegedly owned or controlled.[1]
Significantly, the subpoenas contained notices pursuant to CPLR 5222 (b), which.restrained Freund and Skadden from transferring any property in Freund’s possession or custody, in which Freund "knows or has reason to believe” any of the defendants in the Bankers Trust action have an interest. At the direction of James and T. Peter Pappas, Freund moved to quash the subpoenas. However, Justice Gammerman denied this motion in an order dated October 10, 1996.[2]
While attempting to execute its New York judgment in the State of Connecticut, on June 26, 1996, Bankers Trust commenced a fraudulent conveyance action against Mary Louise Pappas and T. Peter Pappas in the United States District Court for the District Court of Connecticut (civil action No. *469 3:96CV01192), alleging that T. Peter Pappas fraudulently conveyed various assets to his wife or to a trust established in her benefit.[3] However, the court was informed that Bankers Trust’s fraudulent conveyance action was stayed in September 1996, when T. Peter Pappas filed a bankruptcy petition under chapter 7 of the Bankruptcy Code (11 USC § 701 et seq.) in the United States Bankruptcy Court for the District of Connecticut (case No. 96-2S342).[4]
After commencement of the instant proceedings, in March 1997, John J. O’Neill, the bankruptcy trustee in T. Peter Pap-pas’ chapter 7 bankruptcy case, commenced an adversary proceeding in the Bankruptcy Court for the District of Connecticut (O’Neill v Robinson [In re Pappas], No. 97-2055 [Dist of Conn, Hartford Div]) against David M. Robinson, Freund and Ms. Pappas. In the complaint dated March 5, 1997, the trustee alleges, inter alia, that the escrowed funds are the property of the debtor, T. Peter Pappas, or the debtor’s estate because: (1) the Trust is the alter ego of the debtor in that "[t]he Debtor has used the Trust to secrete his assets and as a conduit for his business enterprises; he has used Trust assets to satisfy his debts; and he has exercised de facto control of the Trust”; (2) the transfer of assets from the debtor to the Trust was a sham; (3) "the transfer of assets to the Trust was made with the intent to defraud Debtor’s creditors or was made without consideration by the Debtor who was or was thereby rendered insolvent”; and (4) the debtor has caused various fraudulent conveyances to Ms. Pappas.[5]
*470 DISCUSSION
Consolidation
Preliminarily, with respect to Ms. Pappas’ Turnover Proceeding, Freund has counterclaimed for an order consolidating the Turnover Proceeding (index No. 122281/96) with his CPLR 5239 proceeding (index No. 100483/97), pursuant to CPLR 602 (a). This motion is granted and the claims in both cases will be tried jointly under the index number and caption of the Turnover Proceeding (index No. 122281/96).
The Automatic Stay
Prior to determining who is entitled to the escrowed funds being held by Freund, the court addresses whether T. Peter Pappas’ bankruptcy filing and the bankruptcy trustee’s adversarial proceeding stay the instant proceeding pursuant to the automatic stay provisions of 11 USC § 362 (a).
Bankers Trust, although not a party to the instant proceeding, has appeared and submitted papers herein (in response to Freund’s order to show cause and petition) contending that the automatic stay applies.[6] Ms. Pappas asserts that the Turnover Proceeding is not automatically stayed due to either the pendency of T. Peter Pappas’ bankruptcy case or the commencement of the adversarial proceeding. While this court declines to find that the provisions of 11 USC § 362 (a) stay the instant proceeding, a stay of this proceeding is ordered pursuant to CPLR 2201 for the reasons set forth below.
I.
The United States Bankruptcy Code (11 USC § 362 [a]) provides for an automatic stay of certain prescribed actions against the debtor or the debtor’s property. 11 USC § 362 (a) (1) and (3) provide, inter alia, that the filing of a bankruptcy petition operates as a stay of:
"(1) the commencement or continuation * * * of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case * * * or to recover a claim against the debtor that arose before the commencement of the case * * * [and]
*471 "(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate”.
The stay is "a procedural rule, designed to provide for an orderly bankruptcy proceeding.” (In re Colonial Realty Co., 980 F2d 125, 137 [2d Cir 1992].) The stay is "so central * * * to an orderly bankruptcy process that ' " 'actions taken in violation of the stay are void and without effect.’ ” ’ ” (Supra, quoting In re 48th St. Steakhouse, 835 F2d 427, 431 [2d Cir 1987].)
Where a bankruptcy petition has been filed, a third-party fraudulent conveyance action commenced by creditors to recover claims against the debtor must be stayed pursuant to 11 USC § 362 (a) (1), as it is an action "to recover a claim against the debtor”. (In re Colonial Realty Co., supra, at 132.) The bankruptcy "trustee alone has standing to assert such claims”. (In re Keene Corp., 164 Bankr 844, 850.) Likewise, a creditor’s alter ego claim will be subject to the stay provisions of 11 USC § 362 (a) (1). (Supra.)[7] However, 11 USC § 362 (a) (1) does not stay the instant proceeding because it is not one "against the debtor”, nor one in which a party has interposed a fraudulent conveyance or alter ego claim "to recover a claim against the debtor”. Rather, as Ms. Pappas correctly asserts, the Turnover and CPLR 5239 proceedings concern the Trust, which is a separate entity.
Similarly, the provisions of 11 USC § 362 (a) (3) are inapplicable. The Second Circuit Court of Appeals has held that 11 USC § 362 (a) (3) does not apply to stay fraudulent conveyance actions because under 11 USC § 541 (a) (1), such property is not considered property of the estate until it is recovered. (In re Colonial Realty Co., supra, at 131 [2d Cir 1992].)[8] Only in the event that the bankruptcy trustee prevails on such claims could the escrowed funds be considered property of the estate. (See also, Everything Yogurt v Toscano, 232 AD2d 604 [2d Dept 1996].)
*472 II.
Notwithstanding the inapplicability of the automatic stay provisions of 11 USC § 362, there are a number of factors which mitigate in favor of issuing a stay pursuant to CPLR 2201.
CPLR 2201 provides that "[e]xcept where otherwise prescribed by law, the court in which an action is pending may grant a stay of proceedings in a proper case, upon such terms as may be just.” The court’s power to issue such a stay includes the ability to issue a stay of a proceeding pending before it sua sponte. (See, Halloran v Halloran, 161 AD2d 562, 564 [2d Dept 1990] ; Sternberg v New York Water Serv. Corp., 94 AD2d 723 [2d Dept 1983].) "In determining whether a stay is warranted it is important to consider 'whether it is in the state or in the federal forum that a more complete disposition of the issues may be obtained and whether it is the federal or state court that possesses a greater familiarity and expertise with the trial of such issues.’ ” (Barron v Bluhdorn, 68 AD2d 809, 810 [1st Dept 1979], quoting General Aniline & Film Corp. v Bayer Co., 305 NY 479, 485 [1953].)
It should be noted that CPLR 2201 does not expressly require, where there are two pending actions, that there be complete identity of parties and issues. However, courts have held that "no stay can be granted unless there is a complete identity” between actions with respect to parties, the claims for relief and the issues presented. (See, Hope’s Windows v Albro Metal Prods. Corp., 93 AD2d 711 [1st Dept 1983]; Bridgemarket Assocs. v City of New York, 190 AD2d 561 [1st Dept 1993]; Sears v Country Developers, 178 AD2d 708 [3d Dept 1991] .)
In contrast, there is authority supporting the proposition that where substantial but not complete identity exists between a State and Federal action with respect to parties and issues, a stay may be warranted. For example, in Goodridge v Fernandez, the Appellate Division, First Department, affirmed a stay of a State action on a guaranty pending the resolution of a Federal action on a promissory note where overlapping issues existed in both actions. (121 AD2d 942 [1st Dept 1986].) In considering the factors which supported the granting of the stay, the Court stated, "it is not necessary that the parties in the instant action and the consolidated Federal action be identical or that the respective parties in each action assume identical positions”. (Supra, at 945.)
In El Greco Inc. v Cohn, the Second Department held that a stay was justified where the State and Federal actions were *473 virtually identical, the issues to be resolved overlapped and a more complete disposition of the parties’ respective contentions could be obtained in the earlier commenced Federal action. (139 AD2d 615, 616-617 [2d Dept 1988].) In so holding, the Court stated "the imposition of a stay further avoids the risk of inconsistent adjudications, duplication of proof, and the potential waste of judicial resources”. (Supra, at 617; see also, Case Capital Corp. v Morgan Invs., 154 AD2d 501 [2d Dept 1989] [with respect to the dismissal provision of CPLR 3211 (a) (4), the Court stated that "it is substantial rather than complete identity of parties which is required”]; Bank of N. Y. v Levy, 123 AD2d 589, 590 [2d Dept 1986] [Court held stay was appropriate, "(i)n view of the fact that resolution of the Federal suit may encompass the plaintiffs claim herein and in view of the identity of parties and issues in both cases”]; Procter & Gamble Distrib. Co. v Lloyd’s Underwriters, 44 Misc 2d 872, 875 [Sup Ct, NY County 1964] [in issuing the stay of a State action the court stated, "(t)he judgment in the Federal court will probably determine the entire controversy” and judgment in Federal court but not in State court would "be res judicata as to all parties and all issues”].)
Significantly, this court finds that there is substantial identity between the instant proceeding and the adversarial proceeding commenced in Bankruptcy Court with respect to overlapping issues (including allegations of fraud), parties and the relief requested. Therefore, upon due consideration of issues of comity, orderly procedure, judicial economy and discretion (see, General Aniline & Film Corp. v Bayer Co., supra), the court directs a stay of the instant proceeding pursuant to CPLR 2201.
Accordingly, it is ordered that the special proceeding commenced by Ms. Pappas (index No. 122281/96) and the proceeding commenced by Mr. Freund (index No. 100483/97) will be tried jointly under the index number and caption of the Ms. Pappas’ CPLR 5225 (b) or 5227 proceeding (index No. 122281/ 96); and it is further ordered that pursuant to CPLR 2201, the consolidated proceeding is stayed during the pendency of the adversarial proceeding commenced in Bankruptcy Court entitled O’Neill v Robinson (In re Pappas) (No. 97-2055 [Dist of Conn, Hartford Div], supra) and/or until further order of this court. Upon resolution of the issues in the adversarial proceeding pertinent to these proceedings, any party may move for a lifting of the stay.

. The entities named are Pappas Enterprises, Inc., Oak Ridge Development Corp. and Pappas Development Corp.

. Subsequently, Freund and Skadden appealed Justice Gammerman’s ruling. On April 3, 1997, the Appellate Division, First Department, affirmed Justice Gammerman’s order. (Bankers Trust Co. v Pappas Enters., — AD2d —, 1997 NY Slip Op 03122 [1st Dept, Apr. 3, 1997].)

. This information was brought to the court’s attention pursuant to an affidavit of Madeline F. Grossman, Esq. submitted in response to Freund’s order to show cause and petition. Ms. Grossman’s firm has served as counsel to Bankers Trust in connection with its efforts to execute its New York judgment and in its fraudulent conveyance action in the State of Connecticut. Also, on February 10, 1997, Ms. Grossman’s firm was appointed special counsel to the chapter 7 bankruptcy trustee, John J. O’Neill, Jr., in the T. Peter Pappas bankruptcy case.

. Id.

. Examples of such alleged transfers include: the transfer of an option to purchase a Bentley automobile for no consideration, which was in fact exercised by Ms. Pappas; the payment to Ms. Pappas of over $400,000 compensation in 1991-1992 from a company for whom debtor, but not Ms. Pappas, provided services; and the transfer of various works of art worth more than $250,000 to Ms. Pappas for no consideration.

. Bankers Trust has asked that it be given an opportunity to intervene in this proceeding to assert its allegedly superior interest to the escrowed funds if the court declines to find that the instant proceeding is automatically stayed.

. "[U]nder New York law, the trustee has standing to assert claims based upon piercing the corporate veil or alter ego liability, and creditors are precluded from pursuing those claims until they have been abandoned * * * Thus, alter ego claims, like fraudulent transfer claims, must be asserted by the trustee.” (In re Keene Corp., 164 Bankr 844, 852, supra [citations omitted].)

. 11 USC § 541 (a) (1) provides, inter alia, that the property of a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case.”